J-S07016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ACNB BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SENECA LEANDRO VIEW, LLC AND | : | |
| JEFFREY V. EBERSOLE | : | |
| | : | |
| | : | No. 1040 MDA 2025 |
| | : | |
| APPEAL OF: SENECA LEANDRO | : | |
| VIEW, LLC | : | |

Appeal from the Order Entered March 23, 2026
In the Court of Common Pleas of York County Civil Division at No(s):
2023-SU-000870

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: MAY 28, 2026**

Appellant, Seneca Leandro View, LLC, appeals from the order entered on March 23, 2026, which granted the motion for summary judgment filed by plaintiff ACNB Bank ("Plaintiff Bank") and denied Appellant's cross-motion for summary judgment.  We vacate the trial court's order and remand.

On March 27, 2023, Plaintiff Bank initiated this action by filing a complaint in mortgage foreclosure against Appellant and Jeffrey V. Ebersole ("Defendant Ebersole").  As the complaint averred, on July 28, 2016, Defendant Ebersole borrowed $100,000.00 from Plaintiff Bank.  Complaint, 3/27/23, at ¶ 5.  The terms and conditions of the loan were set forth in a written promissory note ("the Note"), dated July 28, 2016.  The Note was secured by a mortgage ("the Mortgage") on real property located along School

House Lane, York County ("the Property"). The Mortgage was executed on July 28, 2016 by Defendant Ebersole, as mortgagor, in favor of Plaintiff Bank and recorded on August 2, 2016. *Id.* at ¶¶ 5-9.

According to the complaint, in September 2019, the Property was sold at a tax upset sale, resulting in a transfer of the Property from Defendant Ebersole to Appellant ("2019 Deed"). *Id.* at ¶¶ 10-12. Under the terms of the 2019 Deed, Appellant "took the [Property] subject to the recorded Mortgage and its terms." *Id.* at ¶ 13.[1] One of the terms in the Mortgage was a "due-on-sale" clause, which declares:

> DUE ON SALE – CONSENT BY LENDER. [Plaintiff Bank] may, at [Plaintiff Bank's] option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without [Plaintiff Bank's] prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary. . . .

Mortgage, 7/28/16, at 3; *see also* Complaint, 3/27/23, at ¶ 14.

Plaintiff Bank also averred that it "did declare all sums secured by the [Mortgage] to be immediately due and payable as a result of the transfer of the Property" and that Appellant defaulted upon the Mortgage by "fail[ing] to

---

[1] *See also* 2019 Deed, 9/26/19, at 1 (declaring that Appellant purchased the Property "[u]nder and subject . . . to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price with which said property may have or shall become charged or for which it may become liable, if any").

- 2 -

provide payment for the full amount of the [Mortgage] as required [by the due-on-sale] clause of the Mortgage." Complaint, 3/27/23, at ¶¶ 15-16. Plaintiff Bank thus sought judgment in its favor, foreclosing upon Appellant's interest in the property.[2]  **See id.** at Wherefore Clause.

Appellant answered the complaint and admitted that the Property was "sold at tax upset sale in September 2019," resulting in a "transfer of the [Property to Appellant]."  **See** Appellant's Answer and New Matter, 4/21/23, at ¶¶ 10-11.  Nevertheless, Appellant denied Plaintiff Bank's allegation that "[t]he notice provisions of Act 6 . . . do not apply to this commercial mortgage" and further denied that it was in default of the Mortgage because Plaintiff Bank "accepted . . . regular monthly payments from January 2021 through and including March 2023."  **See id.** at ¶¶ 15 and 25.  Further, Appellant claimed that Plaintiff Bank's claims were barred by the doctrine of equitable estoppel, as Plaintiff Bank accepted Appellant's "regular monthly payments from January 2021 through and including March 2023."  **See id.** at 6.

After a default judgment was entered against Defendant Ebersole,[3] Plaintiff Bank filed a motion for summary judgment against Appellant.  Within the motion, Plaintiff Bank claimed that it was entitled to a judgment in its

---

[2] Plaintiff Bank further alleged that "[t]he notice provisions of Act 6, 41 P.S. § 403[,] do not apply to this commercial mortgage."  Complaint, 3/27/23, at ¶ 25.

[3] Defendant Ebersole did not file a notice of appeal from the final order entered in this case.

favor because: "[t]he Mortgage contained a due on sale clause which allowed Plaintiff [Bank] to declare all sums secured immediately due and payable upon transfer without [Plaintiff Bank's] prior written consent;" "[t]he tax upset sale that occurred in September [2019] resulted in a transfer of the [Property] to [Appellant];" the "transfer allowed [Plaintiff Bank] to declare immediately due and payable all sums secured by the Mortgage;" "Plaintiff [Bank] did declare such sums immediately due and payable;" and, Appellant "failed to provide payment of all such sums" to Plaintiff Bank. Plaintiff Bank's Motion for Summary Judgment, 4/1/25, at ¶¶ 27-32.

Appellant filed a response to Plaintiff Bank's motion, claiming that a number of factual disputes precluded summary judgment, including: "whether [Plaintiff Bank] waived its right to enforce the due-on-sale clause through its conduct;" "whether [Plaintiff Bank] is estopped from enforcing the clause after accepting over 60 consecutive monthly payments without reservation . . . [and] induced [Appellant] to invest substantial funds in improving the Property;" "whether the Property qualifies as residential for purposes of Act 6 and Act 91 notice requirements;" and, "whether [Plaintiff Bank's] failure to respond to qualified written requests prejudiced [Appellant's] ability to address the alleged default." *See* Appellant's Response to Summary Judgment Motion, 5/1/25, at 2.

Further, Appellant filed a cross-motion for summary judgment, where Appellant claimed that it was entitled to the dismissal of Plaintiff Bank's complaint because Appellant: "[d]id not miss any payments" and, thus, did

not default upon the Mortgage; "[s]ought but never received" a response to its Qualified Written Requests, where it requested that Plaintiff Bank provide it with basic loan data; "[w]as never served with Act 6 or Act 91 notices" in this residential Mortgage foreclosure action; and, "[e]nhanced the [Property,] which is worth significantly more than the unpaid [loan] balance." Appellant's Cross-Motion for Summary Judgment, 3/30/25, at ¶ 33.

On July 8, 2025, the trial court granted Plaintiff Bank's motion for summary judgment. In relevant part, the order declares:

> [Plaintiff Bank's] Motion for Summary Judgment is GRANTED against [Appellant] in foreclosure upon the real property located [along] School House Lane, Fairview Township, York, Pennsylvania, 17339.
>
> The Prothonotary shall enter and serve this Order as required by law.

Trial Court Order, 7/8/25, at 1.

The trial court did not enter an order disposing of Appellant's cross-motion for summary judgment and, in its later-filed opinion, the trial court declared that Appellant's cross-motion "was never *praeciped* for assignment and remains unresolved." Trial Court Opinion, 9/10/25, at 2 n.1.

Appellant filed a notice of appeal from the July 8, 2025 order. However, as Appellant's cross-motion for summary judgment remained pending before the trial court, we entered an order on March 16, 2026, requesting that the

trial court amend its July 8, 2025 order, so as to dispose of Appellant's cross-motion for summary judgment.[4]

On March 23, 2026, the trial court complied with our order and formally denied Appellant's cross-motion for summary judgment. **See** Trial Court Order, 3/23/26, at 1-2. Our appellate jurisdiction has thus been perfected and the current appeal is properly before this Court. **See** Pa.R.A.P. 341(b)(1) (defining a final order as one that "disposes of all claims and of all parties"); Pa.R.A.P. 905(a)(5) (declaring: "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"). Appellant raises five issues on appeal:

> A. Did the trial court err in granting [Plaintiff Bank's] motion for summary judgment, and in failing to grant [Appellant's] cross-motion for summary judgment, where [Plaintiff Bank] did not support its motion with competent record evidence as required by Pa.R.C.P. 1035.2 and 1035.4, genuine disputes existed as to default and the amount due, and [Plaintiff Bank's] refusal to respond to [Appellant's] Qualified Written Requests under [the Real Estate Settlement Procedures Act] prevented verification of the claimed indebtedness?
>
> B. Did the trial court err in holding that [Plaintiff Bank] did not waive, and was not equitably estopped from enforcing, the discretionary due-on-sale clause where [Plaintiff Bank] had actual knowledge of the transfer, accepted monthly payments for years before and after its purported acceleration, internally treated the loan as "current," and

---

[4] Our March 16, 2026 order retained panel jurisdiction over the appeal. **See** Order, 3/16/26, at 2.

thereby induced [Appellant's] substantial detrimental reliance?

C. Did the trial court err in entering judgment in mortgage foreclosure where the undisputed record shows that [Appellant] made all scheduled installment payments, [Plaintiff Bank] continued to accept and apply those payments, and [Plaintiff Bank] therefore failed to prove the existence of a present default – an essential element of foreclosure – at the time judgment was entered?

D. Did the trial court abuse its discretion in granting the equitable remedy of foreclosure and enforcing the due-on-sale clause where [Plaintiff Bank's] security was not impaired, but instead substantially improved, by [Appellant's] perfect multi-year payment history, more than $120,000 of capital improvements, and a significant equity cushion between the property's value and the outstanding debt?

E. Did the trial court err in concluding that Acts 6 and 91 did not apply, and in allowing foreclosure to proceed without the required pre-foreclosure notices, where the record supports a finding that the loan is a "residential mortgage" on a one-family dwelling used as a residence by the successor owner after a tax upset sale, and where successor owners like [Appellant] are entitled to Act 6 and Act 91 protections?

Appellant's Brief at 3-5.[5]

As we have explained:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

---

[5] In the argument section of Appellant's brief, Appellant attempts to raise claims that are neither contained in nor fairly suggested by its statement of questions involved. These additional claims are waived. *See* Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

**Straw v. Fair**, 187 A.3d 966, 982 (Pa. Super. 2018) (quotation marks and citations omitted); **see also Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010) ("an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals").

First, Appellant claims that the trial court erred in granting Plaintiff Bank's summary judgment motion because the motion was not supported "with competent record evidence as required by Pa.R.C.P. 1035.2 and 1035.4" and Plaintiff Bank's "refusal to respond to [Appellant's] Qualified Written Requests under [the Real Estate Settlement Procedures Act] prevented verification of the claimed indebtedness." Appellant's Brief at 3. These claims fail.

"The holder of a mortgage has the right, upon default, to bring a foreclosure action." **Bank of Am., N.A. v. Gibson**, 102 A.3d 462, 464 (Pa.

Super. 2014). "The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount." *Id.* at 465. Moreover, in a mortgage foreclosure action, a party may not avoid summary judgment based upon a pleading in which it sets forth a general denial to an allegation. To the contrary, "general denials by mortgagors . . . must be considered an admission of those facts." *Gibson*, 102 A.3d at 467.

Under the terms of the 2019 Deed, Appellant took the Property subject to the Mortgage. *See* 2019 Deed, 9/26/19, at 1 (declaring that Appellant purchased the Property "[u]nder and subject . . . to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price with which said property may have or shall become charged or for which it may become liable, if any"). This Mortgage, which was attached to complaint, declares that it secures a loan amount of $100,000.00. *See* Mortgage, 7/28/16, at 1. Further, the Mortgage contains a "due-on-sale" clause, which states:

> DUE ON SALE – CONSENT BY LENDER. [Plaintiff Bank] may, at [Plaintiff Bank's] option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without [Plaintiff Bank's] prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary. . . .

Mortgage, 7/28/16, at 3; *see also* Complaint, 3/27/23, at ¶ 14.

In its answer, Appellant admitted that the Property was "sold at tax upset sale in September 2019," resulting in a "transfer of the [Property to Appellant]." *See* Appellant's Answer and New Matter, 4/21/23, at ¶¶ 10-11. Further, Appellant generally denied – and thus effectively admitted – that: "Plaintiff [Bank] did declare all sums secured by the [Mortgage] to be immediately due and payable as a result of the transfer of the Property;" Appellant is "in default under the terms and conditions of the Mortgage" because Appellant "failed to provide payment for the full amount of the [Mortgage] as required pursuant to the [due-on-sale] clause of the Mortgage;" Plaintiff Bank "made multiple written demands and notice for payment of all sums due and owing under the Note;" "[more] than [60] days have passed and [Appellant] continues to fail and refuse to pay the amounts justly due and owing to [Plaintiff Bank];" and, the total amount due under the Mortgage is $84,608.58. *See* Complaint, 3/27/23, at ¶¶ 15-19; Appellant's Answer and New Matter, 4/21/23, at ¶¶ 15-19. Indeed, to the extent Appellant's answer specifically denied any of the above averments, the specific denial was limited to the fact that Plaintiff Bank "accepted without protest or comment[] regular monthly payments from January 2021 through and including March 2023." *See* Appellant's Answer and New Matter, 4/21/23, at ¶ 15.

As is evident from the above, Appellant admitted that: the Property was transferred without Plaintiff Bank's prior written consent as provided in the due-on-sale clause of the Mortgage; Plaintiff Bank "demanded that Appellant

provide payment for [all sums secured by the Mortgage] as required pursuant to the [due-on-sale] clause of the Mortgage;" Appellant owes $84,608.58 on the Mortgage; and, Appellant has failed to pay the required amount. Further, it is uncontested that the Mortgage originally secured the specific amount of $100,000.00. Therefore, under our precedent, Plaintiff Bank's motion was properly supported because Appellant admitted that "the mortgage is in default [as the Property was transferred without the lender's prior written consent as provided in the due-on-sale clause of the Mortgage, Appellant] failed to pay on the obligation, and the recorded mortgage is in the specified amount [of $100,000.00]." **See Gibson**, 102 A.3d at 464. Appellant's claim that Plaintiff Bank's summary judgment motion was "not supported with competent record evidence" thus fails.

Appellant also claims that summary judgment was inappropriate because Plaintiff Bank "refus[ed] to respond to [Appellant's] Qualified Written Requests under [the Real Estate Settlement Procedures Act ("RESPA")]." According to Appellant, this violation "created [a] genuine dispute[] as to the amount due." Appellant's Brief at 40. This contention fails.

As the Seventh Circuit Court of Appeals explained:

> The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, also known as RESPA, is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions. One provision, § 2605, addresses numerous aspects of the servicing of mortgage loans, including transfers from one servicer to another and the administration of escrow accounts

- 11 -

that lenders use to ensure that insurance and property taxes are paid for the mortgaged property.

Section 2605(e) imposes duties on a loan servicer that receives a "qualified written request" for information from a borrower. Written correspondence triggers RESPA if it "includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) ("Any reasonably stated written request for account information can be a qualified written request.").

Section 2605(e)(2) requires the servicer to do one of the following three things no later than 30 business days after receiving a qualified written request from a borrower: (1) make appropriate corrections to the borrower's account and provide written notice of the corrections to the borrower; (2) after investigating the borrower's account, provide a written explanation as to why the servicer believes the account does not need correction; or (3) after investigating the borrower's account, provide the requested information or explain in writing why the information cannot be obtained. The servicer must also include with the response the contact information for an individual who can provide assistance.

*Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018).

"RESPA **provides a private right of action for actual damages resulting from violations of § 2605**." *Id.* (emphasis added); *see also* 12 U.S.C. § 2605(f).[6] Thus, while Section 2605(f) provides a "private right of

_____

[6] Section 2605(f) declares:

(f) Damages and costs

*(Footnote Continued Next Page)*

---

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of—

(A) any actual damages to each of the borrowers in the class as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $2,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of—

(i) $1,000,000; or

(ii) 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in

*(Footnote Continued Next Page)*

action for actual damages resulting from violations of § 2605," nothing in RESPA provides a borrower with a defense in a state mortgage foreclosure action. *See* 12 U.S.C. § 2605(f). Moreover, in its answer, Appellant generally denied – and thus admitted – the fact that it owes $84,608.58 under the Mortgage. *See* Appellant's Answer and New Matter, 4/21/23, at ¶ 15. Therefore, there is no genuine issue of material fact as to the amount owed. *First Wisconsin Trust Co v. Strausser*, 653 A.2d 688, 692 (Pa. Super. 1995) ("in mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing must be considered an admission of those facts. [U]nquestionably, apart from [the mortgagee, the mortgagors] are the only parties who would have sufficient knowledge on which to base a specific denial") (quotation marks and citations omitted).

Next, Appellant claims that the trial court erred when it granted Plaintiff Bank's summary judgment motion because there are genuine issues of material fact as to whether Plaintiff Bank waived or should be equitably estopped from enforcing the due-on-sale clause. Appellant's Brief at 21.

"Generally, a provision in a mortgage agreement according the mortgagee the option to accelerate the maturity of the mortgage debt, under

---

connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f).

- 14 -

certain conditions or upon the happening of specified events, is regarded as a legitimate contractual stipulation." ***Bank of Pa. v. G/N Enterprises, Inc.***, 463 A.2d 4, 7 (Pa. Super. 1983) (citations omitted). "Such clauses are construed in accordance with the intention of the parties to the same extent as other contracts." ***Id.***

As to the defenses of waiver and estoppel, we have explained:

> A party to a contract may raise waiver as a defense to a counterparty's attempt to enforce the contract.
>
> Waiver is the voluntary and intentional abandonment or relinquishment of a known right. Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.
>
> Unlike waiver, the defense of estoppel does not require proof of a party's intent to relinquish a contractual right. Under the estoppel concept, a contract may be modified if either words or actions of one party to the contract induce another party to the contract to act in derogation of that contract, and the other justifiably relies upon the words or deeds of the first party.

***Centric Bank v. Sciore***, 348 A.3d 1089, 1111-1112 (Pa. Super. 2025) (quotation marks and citations omitted).

First, Appellant claims that Plaintiff Bank waived its right to enforce the due-on-sale clause through its conduct of accepting Appellant's monthly mortgage payments and by unreasonably delaying enforcement of the clause. ***See*** Appellant's Brief at 21-25. At the outset, Appellant did not plead the affirmative defense of waiver in its new matter. ***See*** Appellant's Answer and

New Matter, 4/21/23, at 6-7.  As such, Appellant has waived this affirmative defense.  *See* Pa.R.C.P. 1030 ("all affirmative defenses including but not limited to the defenses of . . . estoppel . . . and waiver shall be pleaded in a responsive pleading under the heading 'New Matter'"); Pa.R.C.P. 1032(a) (providing that, except for certain defenses, "[a] party waives all defenses and objections which are not presented either by preliminary objection, answer or reply"); *Joyce v. Mankham*, 465 A.2d 696, 697 (Pa. Super. 1983) (holding: "[b]ecause affirmative defenses must be part of the pleadings, . . . appellant's subsequent averment of estoppel and fraud in her answer to appellee's request for summary judgment failed to preserve the issue").

Moreover, even if Appellant had not waived this defense, it is meritless. Here, the Mortgage's due-on-sale clause contains no time limitation that would constrain Plaintiff Bank's enforcement of the provision.  *See* Mortgage, 7/28/16, at 3.  In addition, the Mortgage contains an express nonwaiver clause, declaring:

> **No Waiver by Lender**.  Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not

constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Mortgage, 7/28/16, at 8.

While a nonwaiver clause may itself be waived, the existence of this clause notified Appellant that Plaintiff Bank's acceptance of monthly mortgage payments after the transfer did not waive its right to enforce the due-on-sale clause if it later chose. Appellant's claim to the contrary fails.

Appellant also claims that Plaintiff Bank should be estopped from enforcing the due-on-sale clause because Appellant "invested over $120,000 in significant improvements to the Property." Appellant's Brief at 30. This claim fails, given that Appellant did not raise this specific defense in its new matter[7] and Appellant does not provide any facts as to when these alleged improvements were initiated or how its reliance upon Plaintiff Bank's acceptance of the monthly mortgage payments was justifiable, given the presence of the Mortgage's due-on-sale clause (with no time limitation for enforcement) and nonwaiver provision. Thus, Appellant's second claim fails.

Third, Appellant claims that it did not default upon the Mortgage because "[Appellant] made all scheduled installment payments" on the Mortgage. *See*

---

[7] Appellant's answer **specifically claimed** that Plaintiff Bank was equitably estopped from enforcing the due-on-sale clause because "[Appellant] paid, and Plaintiff [Bank] accepted without protest or comment, regular monthly payments from January 2021 through and including March 2023." Appellant's Answer and New Matter, 4/21/23, at 6. Appellant never claimed that equitable estoppel applied because it "invested over $120,000 in significant improvements to the Property." *See id.*; *see also* Appellant's Brief at 30.

Appellant's Brief at 25. This claim fails, as Appellant's default of the Mortgage was not for failure to make "all scheduled installment payments," but, rather, for the unauthorized transfer of the Property from Defendant Ebersole to Appellant. ***See*** Complaint, 3/27/23, at ¶ 15. Therefore, Appellant's third claim immediately fails.

Fourth, Appellant contends that the trial court erred when it allowed Plaintiff Bank to enforce the due-on-sale clause in the Mortgage because Plaintiff Bank's security was not impaired. Appellant's Brief at 31.

As explained above, a due-on-sale clause in a Mortgage is "regarded as a legitimate contractual stipulation" and must be "construed in accordance with the intention of the parties to the same extent as other contracts." ***G/N Enterprises, Inc.***, 463 A.2d at 7 (citations omitted). In the case at bar, the due-on-sale clause contains no restriction that its use be limited to instances where Plaintiff Bank's security is impaired. ***See*** Mortgage, 7/28/16, at 3. As such, Appellant's fourth numbered claim on appeal fails.

Finally, Appellant claims that the trial court erred when it granted Plaintiff Bank's motion for summary judgment because Appellant never received the pre-foreclosure notices required by the Loan Interest and Protection Law ("Act 6")[8] and the Homeowner's Emergency Mortgage Assistance Act of 1983 ("Act 91").[9] After careful consideration, we conclude

---

[8] ***See*** 41 P.S. §§ 101-605.

[9] ***See*** 35 P.S. §§ 1680.401c-1680.412c.

- 18 -

that, although Appellant was not entitled to notice under Act 91, there is a genuine issue of material fact as to whether Appellant was entitled to notice under Act 6. Therefore, we must vacate the trial court's order and remand.

As the Pennsylvania Supreme Court has explained:

> Act 6 relates to the foreclosure of residential mortgages, and Act 91 deals with state-funded emergency assistance to residential homeowners who are facing mortgage foreclosure. Both statutes require a residential mortgage holder to provide notice to the borrower of the holder's intent to foreclose. To satisfy this obligation for loans that are covered by both Act 6 and Act 91, lenders issue a combined notice to borrowers to comply with both statutes. Indeed, where both acts apply, the Pennsylvania Housing Finance Agency has created a notice intended to comply with both statutes, which "shall be in lieu of any other notice required by law." 35 P.S. § 1680.403c(b)(1).

*J.P. Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 188-189 (Pa. 2019).

Initially, we conclude that Appellant was not entitled to notice under Act 91, as Act 91 specifically declares that it does not apply if "[t]he property securing the mortgage is not the principal residence of the mortgagor." 35 P.S. § 1680.401c(a)(1). In the case at bar, the mortgagor, Seneca Leandro View, LLC, is a corporation and there is no factual dispute that the Property is "not the principal residence" of the corporation. *See*, *e.g.*, 15 Pa.C.S.A. § 8818(a) ("[a] limited liability company is an entity distinct from its member or members"). Further, in Appellant's response to Plaintiff Bank's motion for summary judgment, Appellant admitted that the Property is "presently used in part by Alvin Cox (trustee of [Appellant's] sole member) **as a secondary**

- 19 -

**dwelling** in Pennsylvania."  Appellant's Response to Summary Judgment Motion, 5/1/25, at 5 (emphasis added).  Thus, since the Property is not the "principal residence" of anyone, Act 91 notice was unnecessary.

Regarding notice under Act 6, the statute provides:

> Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

41 P.S. § 403(a) (emphasis added).  Act 6 defines a "residential mortgage debtor" as "a non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part a residential mortgage **and a successor record owner of the property, if any, who gives notice thereof to the residential mortgage lender**."  41 P.S. § 101 (emphasis added); **see also Marra v. Stocker**, 615 A.2d 326, 329 (Pa. 1992) (holding: "A residential mortgage debtor is defined in Act 6 as 'a non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part a residential mortgage **and a successor record owner of the property, if any, who gives notice thereof to the residential mortgage lender**.' 41 P.S. § 101 (emphasis added).  In this case the Marras were successor record owners of the property on December 16, 1985, when the property was deeded to them and recorded by the tax claim bureau.  On March 12, 1986, the Marras notified the Bank of their ownership of the property.  Thus, the Marras were

residential mortgage debtors and were entitled to Act 6 notice") (emphasis in original).

While Appellant is a corporation (and, thus, does not constitute a "non-corporate borrower" under the statute), it nonetheless falls under Act 6's definition of a "residential mortgage debtor," as it is a "successor record owner of the property . . . who [gave] notice thereof to" Plaintiff Bank. ***See id.*** Further, in its response to Plaintiff Bank's motion for summary judgment, Appellant put forth evidence that the Property is a single-family dwelling, with two bedrooms, two baths, and is presently being used as a residence. ***See*** Appellant's Response to Motion for Summary Judgment, 5/1/25, at ¶ 5 (Unsworn Declaration of Alvin Cox, stating "I am presently utilizing the [Property] as a second residence"); ***see also*** Appellant's Response to Motion for Summary Judgment, 5/1/25, at 1-3 (Realtor.com Report).

Under Act 6, the term "residential mortgage" means "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units." 41 P.S. § 101. Thus, while Plaintiff Bank contends that the Mortgage in this case must be considered "commercial," Appellant has put forth facts demonstrating that the Property is "residential," that Appellant is a "residential mortgage debtor," and that Appellant is under "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon

real property located within this Commonwealth containing two or fewer residential units." 41 P.S. § 101. As such, there is a genuine issue of material fact as to whether Appellant was entitled to notice under Act 6. *See* 41 P.S. § 403(a).

Since it is undisputed that Plaintiff Bank did not provide Appellant with notice under Act 6 and since there is a genuine issue of material fact as to whether Appellant was entitled to this notice, we must vacate the trial court's order in this case and remand for further proceedings. *See* Complaint, 3/27/25, at ¶ 25; *see also Marra*, 615 A.2d at 329-330 (holding: "Act 6 notice applies to all defaults. . . . There is no exception to the notice requirements of Act 6 and to read one into the statute would be to amend it and, thereby, improperly engage in legislating"); *Taggart*, 203 A.3d at 192-193 ("Section 403 of Act 6 requires a lender to provide pre-foreclosure notice at least thirty days before 'accelerat[ing] the maturity of any residential mortgage obligation, commenc[ing] any legal action including mortgage foreclosure to recover under such obligation, or tak[ing] possession of any security of the residential mortgage debtor for such residential mortgage obligation.' [41 P.S. § 403(a)]. By its terms, the statutory notice is mandatory and must be provided at least thirty days before the lender institutes 'any' legal action, including foreclosure") (emphasis omitted).

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/28/2026